UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MARY JANE GANDINO,

                              Plaintiff,

v.                                                    5:17-CV-0042
                                                      (WBC)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

_____

APPEARANCES:                                  OF COUNSEL:

OLINSKY LAW GROUP                             HOWARD D. OLINSKY, ESQ.
  Counsel for Plaintiff
300 S. State St., Ste. 420
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.                   JASON PECK, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment,

pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in

accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local

Rule 73.1 and the consent of the parties. (Dkt. Nos. 22, 23.)

Currently before the Court, in this Social Security action filed by Mary Jane

Gandino ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings.  (Dkt. Nos. 19, 20.)  For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born in 1969.  (T. 89.)[1]  She completed high school.  (T. 173.) Generally, Plaintiff's alleged disability consists of migraines, pain in her knees, back, feet, and between her shoulder blades, fatigue, stiffness in the joints and back, and depression.  (T. 177.)  Her alleged disability onset date is June 3, 2008.  (T. 89.)  Her date last insured is December 31, 2013.  (*Id.*)  She previously worked as a tuning supporter for a cable filter company.  (T. 173.)

### B.    Procedural History

In May 2010, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (T. 89.)  Plaintiff's applications were initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ").  On June 9, 2011, Plaintiff appeared before the ALJ, Bruce S. Fein.  (T. 43-88.)  On September 22, 2011, ALJ Fein issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 25-42.)  On May 8, 2013 the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-5.)[2]

---

[1]    An administrative transcript was filed on March 1, 2017; the Court struck that transcript from the record.  Dkt. Nos. 8, 17, 18.  The corrected administrative records are at Dkt. No. 16 filed on August 24, 2017 and the supplemental transcript filed on May 24, 2017 at Dkt. No. 11.  Throughout this decision, Dkt. No. 16 citations are noted as "T" and Dkt. No. 11 citations are noted as "S."

[2]    Plaintiff filed subsequent applications for benefits on May 15, 2013 and alleged an onset date of September 23, 2011 (the day after the ALJ Fein's first decision).  Those applications were denied through the hearing level in a decision dated February 18, 2015 by a different ALJ.  Therefore, ALJ Fein's November 9, 2015 decision reviewed the time period from June 3, 2008 through September 22, 2011.

Plaintiff appealed in the Northern District of New York and on December 12, 2014, the Commissioner's decision was reversed and remanded pursuant to 42 U.S.C. Sec. 405(g), sentence four, for further proceedings.  (S. 630-650.)  On April 17, 2015, the AC issued a remand order for further proceedings consistent with the order of the district court.  (S. 651-671, 672-676.)  On September 3, 2015 Plaintiff again appeared before ALJ Fein.  (S. 105-139.)  On November 9, 2015, ALJ Fein issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 503-517.)[3]  Thereafter, Plaintiff timely sought judicial review in this Court.

### C.    The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law.  (T. 503-517.)  First, the ALJ found that Plaintiff met the insured status requirements through December 31, 2013 and Plaintiff had not engaged in substantial gainful activity since June 3, 2008.  (T. 503.)  Second, the ALJ found that Plaintiff had the severe impairments of fibromyalgia, Raynaud's phenomenon, migraine headaches, and asthma.  (T. 504.)  Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 507.)  Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform:

> light work as defined in 20 C.F.R. [§§] 404.1567(b) and 416.967(b) and is able to lift/carry up to 10 [lbs.] and 20 lbs. frequently, sit 6 hours with normal breaks[,] stand/walk 6 hours [with] normal breaks and is occasionally able to perform all postural activities including stooping, balancing and climbing stairs but should avoid climbing ropes/ladders/scaffolds, kneeling/crouching/crawling.  Manipulative tasks such as handling/fingering/feeling can be performed frequently.  Environmental

---

[3]    The Court Transcript Index incorrectly identifies the date of this decision as November 4, 2015.  (S. 498-526.)

limitations require avoidance of concentrated exposure to extreme cold/heat, irritants such as fumes/odors/gases/dust/poorly ventilated areas and unprotected heights. [Plaintiff] should perform goal-oriented work instead of production rate or pace work.

(T. 508.)[4]  Fifth, the ALJ determined that Plaintiff was incapable of performing her past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 515-516.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff makes two separate arguments in support of her motion for judgment on the pleadings.  First, Plaintiff argues the ALJ failed to properly consider Plaintiff's mental impairments and limitations.  (Dkt. No. 19 at 20-25 [Pl.'s Mem. of Law].)  Second, and lastly, Plaintiff argues the RFC determination was not supported by substantial evidence.  (*Id.* at 25-27.)

### B.    Defendant's Arguments

In response, Defendant makes two arguments.  First, Defendant argues the ALJ adequately considered Plaintiff's mental impairments and limitations.  (Dkt. No. 20 at 8-13 [Def.'s Mem. of Law].)  Second, and lastly, Defendant argues substantial evidence supported the RFC finding for a limited range of unskilled light work.  (*Id.* at 13-16.)

## III.   RELEVANT LEGAL STANDARD

### A.    Standard of Review

---

[4]    Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.  20 C.F.R. §§ 404.1567(b), 416.956(a).

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and

despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.    Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920[5]. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

### IV.    ANALYSIS

### A.  Mental Limitations

---

[5]    Effective March 27, 2017, many of the Regulation cited herein have been amended, as have SSRs cited herein. Nonetheless, because Plaintiff's social security application was filed before the new regulations and SSRs went into effect, the Court reviews the ALJ's decision under the earlier regulations and SSRs.

Plaintiff asserts that the ALJ failed to properly consider her mental impairments and limitations at step two of the sequential process and in formulating Plaintiff's RFC. (Dkt. No. 19 at 20-25 [Pl.'s Mem. of Law].)

At step two of the sequential evaluation process, the ALJ must determine whether Plaintiff had a severe impairment that significantly limited her physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). Plaintiff bears the burden of presenting evidence establishing severity. *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citing *Miller v. Comm'r of Social Sec.*, No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); *see also* 20 C.F.R. §§ 404.1512(a), 416.912(a). Although the Second Circuit has held that this step is limited to "screen[ing] out *de minimis* claims," *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." *Coleman v. Shalala*, 895 F.Supp. 50, 53 (S.D.N.Y. 1995); *see Prince v. Astrue*, 514 F. App'x 18, 20 (2d Cir. 2013).

Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel*, No. 97-CV-5759, 1999 WL 294727, at *5 (E.D.N.Y. March 19,1999) (quoting *Bowen v. Yuckert*, 482 U.S. 137, 154 n.12, 107 S.Ct. 2287 (1987)).

In addition, "[w]here an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly considered the effects of the impairment in the remainder of his analysis." *Chavis v. Astrue*, No. 07-

7

CV-0018, 2010 WL 624039, at *12 (N.D.N.Y. Feb.18, 2010); *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding the alleged step two error harmless because the ALJ considered the plaintiff's impairments during subsequent steps); *see also* 20 C.F.R. §§ 404.1523, 416.923 (stating that the ALJ is required to consider the "combined effect of all of [plaintiff's] impairments without regard to whether any such impairment, if considered separately would be of sufficient severity").  It has been well established that "[b]ecause step two merely serves as a filter to screen out *de minimis* disability claims, a finding of any severe impairment, whether attributable to a single condition or a combination of conditions, is enough to satisfy its requirements." *Kessler v. Colvin*, 48 F. Supp. 3d 578, 593 (S.D.N.Y. 2014) (citing *Fortier v. Astrue*, No. 10-CV-01688, 2012 WL 3727178, at *9 (D. Conn. May 11, 2012)).

 At step two the ALJ determined that Plaintiff's medically determinable impairment of depressive disorder was nonsevere.  (T. 506.)  Plaintiff essentially argues that the ALJ erred in his step two analysis, because he misstated or mischaracterized the opinions of the State agency medical examiners and therefore the ALJ erred in relying on their opinions in making his determination.  (Dkt. No. 19 at 22 [Pl.'s Mem. of Law].)

Non-examining Stage agency medical examiners, Dr. Hochberg and Dr. Harding, reviewed Plaintiff's medical record.  Both doctors completed a Psychiatric Review Technique form and both indicated that Plaintiff did not have a severe mental impairment.  (T. 279, 439.)  The remainder of both Psychiatric Review Technique forms was blank, including the section on the four broad functional areas known as the "paragraph B" criteria.  (T. 289, 449.)  In his step two analysis, the ALJ correctly noted

that both doctors opined that Plaintiff's mental impairment was nonsevere.  (T. 506.)  However, in his discussion of the paragraph B criteria, the ALJ stated that Drs. Hochberg and Harding "affirmed that [Plaintiff] had no more than mild limitations with activities of daily living," that both doctors "concluded [Plaintiff had] no more than mild limitations in [social functioning]," and no more than mild limitations in concentration, persistence or pace.  (T. 506-507.)  However, as stated herein, the paragraph B portion of the form was left blank.  It is unclear if the ALJ misread the form or if he interpreted the blank form as indication that Plaintiff had no more than mild limitations.  Either way, any error the ALJ may have made in his review of the doctors' statements was harmless.

First, the ALJ relied on other substantial evidence in the record to support his determination that Plaintiff had no more than mild limitations in the four broad functional areas.  In making his determination, the ALJ relied on the observations, medical examinations, and opinions of the consultative examiners in the record. (T. 506-507.)  Dennis Noia, Ph.D., noted that Plaintiff could care for herself, cook, do light cleaning, shop, manage money, and drive.  (T. 269.)  Plaintiff also reported to Kalyani Ganesh, M.D., that she could cook, clean, do laundry, and shop.  (T.430.)  Consultative examiner Kristin Barry, Ph.D. and Dr. Noia concluded that Plaintiff was able to maintain attention and concentration.  (T. 271, 437.)  Therefore, other substantial evidence in the record supported the ALJ's determination that Plaintiff had no more than mild limitations in the four broad functional areas.

Second, the ALJ proceeded with the sequential process and thoroughly discussed Plaintiff's mental impairments in his RFC analysis.  As stated herein, any

alleged error at step two was harmless because the ALJ considered all of Plaintiff's impairments during subsequent steps of the process.  *See Reices-Colon,* 523 F. App'x at 798.  Therefore, any error made at step two was harmless because other substantial evidence in the record supported the ALJ's determination and the ALJ thoroughly discussed Plaintiff's mental impairments in formulating his RFC determination.

Next, Plaintiff asserts that although the ALJ afforded significant weight to the opinions of Drs. Noia and Barry, he failed to account for their opined limitations in the RFC determination.  (Dkt. No. 19 at 21-22 [Pl.'s Mem. of Law].)

The RFC is an assessment of "the most [Plaintiff] can still do despite [his or her] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The ALJ is responsible for assessing Plaintiff's RFC based on a review of relevant medical and non-medical evidence, including any statement about what Plaintiff can still do, provided by any medical sources.  *Id.* at §§ 404.1527(d), 404.1545(a)(3), 404.1546(c), 416.927(d), 416.945(a)(3), 416.927(d).

On July 2, 2010, Dr. Noia examined Plaintiff and provided a medical source statement.  (T. 269-272.)  Based on his examination, Dr. Noia opined that Plaintiff:

> appear[ed] to be capable of understanding and following simple instructions and directions.  She appear[ed] to be capable of performing simple and some complex tasks with supervision and independently.  She appear[ed] to be capable of maintaining attention and concentration for tasks.  She [could] regularly attend to a routine and maintain a schedule.  She appear[ed] capable of making appropriate decisions.  She appear[ed] to be able to relate to and interact moderately well with others.  She appear[ed] to be having some difficulty dealing with stress.

(T. 272.)

On January 15, 2010, Dr. Barry examined Plaintiff and provided a medical source statement.  Dr. Barry opined that Plaintiff:

[was] able to follow and understand simple directions and instructions. She [was] able to maintain her attention and concentration and should be able to perform simple tasks independently. She did complete high school, but has a history of some reading delays. [Plaintiff] state[d] that she is unable to work because of her migraines and health issues. She also at times has difficulty handling stressors.

(T. 437.)

Plaintiff appears to argue that the ALJ's conclusion, that there were no limitations in functioning, is inconsistent with the above opinions which indicated "mild" to "moderate" limitations in functioning. (Dkt. No. 19 at 21 [Pl.'s Mem. of Law].) Elsewhere in her brief, Plaintiff asserts that the ALJ's RFC determination failed to account for both doctors' assessments of mild and moderate limitations because he only limited Plaintiff to "goal-oriented work instead of production rate or pace work." (Id. at 24.)

Basic mental work activities include the ability to: understand, carry out, and remember simple instructions; use judgment; respond appropriately to supervision, co-workers and usual work situations; and deal with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b)(3)-(6), 416.921(b)(3)-(6).

Although the ALJ's RFC determination did not specifically state that Plaintiff was limited to simple, routine, repetitive tasks, any error to include such language in the decision was harmless.

At the hearing the ALJ posed a hypothetical RFC to the vocational expert which mirrored his physical RFC determination and further specifically limited Plaintiff to "simple, routine, and repetitive tasks, and occasional complex tasks, and is able to perform goal oriented work instead of production pace rate work." (T. 594-597.) Such language was consistent with the opinions of the consultative

11

examiners.  The vocational expert testified that other work existed in significant numbers in the national economy based on Plaintiff's vocational factors and the ALJ's RFC hypothetical.  (*Id.*)  The ALJ ultimately relied on the vocational expert testimony in making his step five determination that a significant number of occupations existed in the national economy which Plaintiff could perform. Therefore, although the ALJ's written RFC determination did not specifically limit Plaintiff to "simple, routine, repetitive tasks," the ALJ included such limitations to the VE at the hearing and clearly the VE took those limitation into consideration in providing occupations that exist in the national economy Plaintiff could perform.

Lastly, Plaintiff argues that the ALJ mischaracterized Plaintiff's testimony and "sidestep[ped]" this Court's remand order pertaining to the opinion of Nurse Lynne Odell-Holzer.  (Dkt. No. 19 at 23-24 [Pl.'s Mem. of Law].)  This Court previously remanded because the ALJ failed to mention the opinion co-signed by Nurse Odell-Holzer and John Tanquary, M.D.  (T. 647.)

Here, the ALJ specifically addressed the medical source statement co-signed by Nurse Odell-Holzer and Dr. Tanquary.  (T. 511-512.)  The ALJ concluded that the opinion was of "no evidentiary value."  (T. 512.)  The ALJ ultimately reasoned, based on the record and Plaintiff's testimony, that although Dr. Tanquary signed the statement he never actually treated Plaintiff.  (*Id.*)  The ALJ determined that the statement was not supported by the record because the record contained no evidence of formal or acute mental health treatment from an

acceptable medical source, any hospitalization, or any evidence that Plaintiff's medication was not effectively controlling her symptoms.  (*Id.*)[6]

Here, the ALJ properly assessed the medical source statement and provided good reasons for affording the statement "no evidentiary value."  (T. 512; T. 261-268.) To be sure, medical source statements co-signed by a treating physician should be evaluated as having been the treating physician's opinion. *See Santiago v. Barnhart,* 441 F.Supp.2d 620, 628 (S.D.N.Y. 2006) ("[T]here is no reason to believe that the report [the treating doctor] signed does not reflect his own view.  Nor is there any legal principle which states that a doctor must personally write out a report that he signs for it to be afforded weight.  Since [the treating doctor] signed his name to the report and there is no evidence indicating that the report does not represent his opinion, the ALJ erred in discounting [the doctor's] opinion on this basis alone."); *Djuzo v. Comm'r of Soc. Sec.*, No. 5:13-CV-272, 2014 WL 5823104, at *4 (N.D.N.Y. Nov. 7, 2014) ("[w]hen a treating physician signs a report prepared by a nurse practitioner [or a physician's assistant] (an 'other source' whose opinions are not presumptively entitled to controlling weight), the report should be evaluated under the treating physician rule unless evidence indicates that the report does not reflect the doctor's views."); *Waters v. Astrue*, No. 5:10-CV-110, 2011 WL 1884002, at *8, n.5 (D. Vt. May 17, 2011) ("Cases

---

[6] Although a nurse practitioner may be a treating health care provider, not all treating health care providers are "treating sources" under the applicable Social Security Regulations. A "treating source" is defined as the plaintiff's "own physician, psychologist, or other acceptable medical source who provides [plaintiff], or has provided [plaintiff], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [plaintiff]." 20 C.F.R. §§ 404.1502, 416.902. There are five categories of "acceptable medical sources." 20 C.F.R. §§ 404.1513(a), 416.913(a). Nurse practitioners are not included within those categories. Nurse practitioners are listed among the "other medical sources," whose opinion may be considered as to the severity of a plaintiff's impairment and ability to work, but their conclusions are not entitled to any special weight. 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1).

have held that when a doctor and a physician's assistant sign the same reports, 'the opinions [are] those of [the treating physician] as well as those of [the physician's assistant.]'") (alteration in original) (quoting *Riechl v. Barnhart*, No. 02-CV-6169, 2003 WL 21730126, at *11 (W.D.N.Y. June 3, 2003)).   Although the ALJ concluded that Dr. Tanquary was not a treating source, he evaluated the co-signed opinion under "treating physician rule" as outlined in 20 C.F.R. §§404.1527(c) and 416.927(c).

The ALJ concluded that Dr. Tanquary did not have a treating relationship with Plaintiff.  (T. 512.)  The ALJ noted that Dr. Tanquary's signature on the assessment was "void of meaning or substance because the claimant testified she never saw this physician, so his signature, without a basis for clinical diagnostic findings despite being an acceptable medical source is of no evidentiary value." (*Id.*)  Indeed, treatment notations were provided by Nurse Odell-Holtz.  (S. 1027-1032.)  The fact remains that the record did not show that Dr. Tanquary ever examined Plaintiff and it was Plaintiff's burden to supply such evidence.  As stated by Defendant, not only was it permissible for the ALJ to note that Dr. Tanquary was not a treating source, the Regulations required the ALJ to consider the examining and treatment relationship between Dr. Tanquary and Plaintiff.  (Dkt. No. 20 at 12 [Def.'s Mem. of Law]; 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2).)  Overall, the ALJ did not reject the whole of the treating source statement because it was completed by a non-acceptable medical source.  The ALJ concluded that the limitations imposed therein conflicted with treatment notations and other objective findings in the record.  (T. 512.)

Overall, the ALJ properly assessed Plaintiff's mental limitations at step two and in formulating his RFC determination.  Any error at step two in assessing the opinions of

Drs. Harding and Hochberg was harmless because other substantial evidence in the record supported the ALJ's conclusion and further the ALJ proceeded with the sequential process and thoroughly discussed Plaintiff's mental limitations in his RFC assessment.  Further, the ALJ's RFC determination fully accounted for the opinions of the consultative examiners limiting Plaintiff to simple, routine, and repetitive work.  Although the ALJ's written decision did not include such language, the hypothetical posed to the vocational expert did provide for those limitations.  Therefore, the ALJ's mental RFC determination is upheld.

### B.  Physical Limitations

As outlined herein, the ALJ determined that Plaintiff had the physical RFC to perform light work with additional limitations.  (T. 508.)  In formulating his physical RFC determination, the ALJ relied on the medical source opinions provided by consultative examiners Roberto Rivera, M.D. and Dr. Ganesh.  (T. 513; T. 274-278, 430-433.)

Plaintiff asserts that the ALJ erred in his physical RFC determination because he improperly discounted the opinions of Plaintiff's treating sources, Joy Dolorico-Magsino, M.D. and Rajeev Saini, M.D.  (Dkt. No. 19 at 25-27 [Pl.'s Mem. of Law].)  Plaintiff contends that in analyzing the medical source opinions, the ALJ rejected them based on a perceived lack of objective evidence which was improper because Plaintiff suffered from fibromyalgia, a disease for which "there are no objective tests" to confirm.  (*Id.*; citing *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003).)

To be sure, denying a fibromyalgia plaintiff's claim of disability based on a perceived lack of objective evidence is reversible error.  *See Grenier v. Colvin,* No. 13-CV-484, 2014 WL 3509832, at *3-4 (N.D.N.Y. July 14, 2014).  Similarly, discrediting

treating source medical opinions and subjective testimony concerning limiting effects of fibromyalgia simply because such evidence is not corroborated by objective medical evidence beyond what is needed for a diagnosis is error.  *See Green-Younger,* 335 F.3d at 108.

However, the Second Circuit has held that a "mere diagnosis of fibromyalgia without a finding as to the severity of symptoms and limitations does not mandate a finding of disability."  *Rivers v. Astrue*, 280 F. App'x 20, 22 (2d Cir. 2008); *see also Prince v. Astrue*, 514 F. App'x 18 (2d Cir. 2013).  Therefore, while courts recognize that fibromyalgia is "a disease that eludes [objective] measurement," *Green-Younger,* 335 F.3d at 108, a diagnosis of fibromyalgia does not mandate a finding of disability, *see id.* at 104 (physician diagnosing fibromyalgia stated that the condition "in certain instances can be debilitating").

Dr. Saini opined that Plaintiff had immense physical limitations that would essentially preclude all employment.  (T. 300-303.)  The ALJ afforded Dr. Saini's opinion less than controlling weight.  (T. 513-514.)  In assessing Dr. Saini's opinion, the ALJ essentially concluded that the limitations the doctor imposed were inconsistent with the doctor's treatment notations and Plaintiff's testimony.  (T. 513.)  The ALJ further concluded that the limitations were inconsistent with the physical examinations conducted by the consultative examiners.  (*Id.*)

Dr. Dolorico-Morgsino also completed a medical source statement.  (T. 336-339.)  The ALJ afforded the doctor's statement "little evidentiary value."  (T. 514.)  In evaluating her opinion, the ALJ took into consideration the length of treatment, physical exam notations, Plaintiff's testimony, and other objective reports in the record.  (*Id.*)

Here, the ALJ provided good reasons in affording Dr. Saini's opinion and Dr. Dolorico-Morgsino's opinion less than controlling weight and substantial evidenced in the record supported his determination.

The ALJ did not question Plaintiff's diagnosis of fibromyalgia.  Indeed, the ALJ found, at step two, that Plaintiff's fibromyalgia was a severe impairment.  Therefore, the ALJ did not impermissibly rely on a perceived lack of objective signs and symptoms in discounting Plaintiff's diagnosis of fibromyalgia and subsequent limitations.  Instead, the ALJ assessed the medical opinion evidence, and other evidence, in the record and concluded that Plaintiff's limitations due to her fibromyalgia were not as severe as opined by her treating sources.  *See Domm v. Colvin*, 579 F. App'x 27 (2d Cir. 2014) (the Court found that the ALJ had properly pointed to substantial evidence for giving the treating source opinion only probative weight, noting that the restrictive assessment was inconsistent with the source's own treatment notes, the conclusion of other medical sources, and plaintiff's testimony regarding her daily functioning); *see Johnson v. Comm'r of Soc. Sec.,* 669 F. App'x 580 (2d Cir. Oct. 18, 2016) (ALJ properly afforded treating source's opinion less than controlling weight where the opinion was not supported by the medical evidence and was at times internally inconsistent and the doctor relied primarily on plaintiff's self-reported symptoms).  As outlined above, the ALJ provided good reasons for affording the treating source opinions less than controlling weight.

Further, substantial evidence in the record supported the ALJ's physical RFC determination.  Under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the

evidence in the record could support her position.  Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record.  *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review).  Although Plaintiff provided evidence which could support greater functional limitations than provided by the ALJ's RFC determination, Plaintiff has failed to show that no reasonable fact finder could have reached the ALJ's determination.

In formulating his physical RFC the ALJ relied on the medical source opinions of the consultative examiners, objective physical examinations in the record, and Plaintiff's testimony regarding daily activities.

On July 7, 2010, Dr. Rivera opined Plaintiff had no limitations to sitting, standing, and walking.  (T. 278.)  He further opined Plaintiff had "mild limitations to lifting, carrying, pushing, and pulling secondary to neck pain and lower back pain." (*Id.*)  Dr. Rivera opined Plaintiff should avoid exposure to smoke, dust, and other known respiratory irritants.  (*Id.*)  On examination, Dr. Rivera noted Plaintiff had normal range of motion in her spine, negative straight leg raises, full range of motion in her upper and lower extremities, and full strength in her extremities.  (T. 277.)

Dr. Ganesh opined that Plaintiff had "no gross physical limitation [. . .] to sitting, standing, walking or use of upper extremities." (T. 432.) On examination Dr. Ganesh observed Plaintiff had normal range of motion in her spine, negative straight leg raises, full range of motion in her upper and lower extremities, and full strength in her extremities. (T. 431.)

As stated by Defendant, contrary to Plaintiff's argument, the ALJ did not merely substitute his judgment for that of competent medical opinion. (Dkt. No. 20 at 15 [Def. Mem. of Law].) Rather, the ALJ resolved conflicts in the record and weighed the medical evidence against the record as a whole. (*Id.*; *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).) The ALJ reasonably concluded Plaintiff retained the RFC for a limited range of light work and his determination was ultimately supported by the medical opinions provided by the consultative examiners. *See Monette v. Colvin*, 654 F. App'x 516, 518 (2d Cir. 2016) (ALJ's RFC determination supported by opinion of consultative examiner); *see Snyder v. Colvin*, 667 F. App'x 319 (2d Cir. 2016); *see Heagney-O'Hara v. Comm'r of Soc. Sec.*, 646 F. App'x 123, 126 (2d Cir. 2016); *see Christina v. Colvin*, 594 F. App'x 32 (2d Cir. 2015).

Overall, the ALJ properly assessed Plaintiff's mental impairments at step two and in his RFC determination. Although the ALJ's RFC determination did not specifically limit Plaintiff to simple, routine, repetitive tasks, such limitations where implied and the ALJ relied on vocational expert testimony that there were a significant number of occupations in the national economy Plaintiff could perform with those specified limitations. The ALJ also properly evaluated the medical opinion evidence in the record. Substantial evidence in the record, primarily the opinions of the consultative examiners,

supported the ALJ's mental and physical RFC determination.  Therefore, the ALJ's determination is upheld.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 19) is

      **<u>DENIED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 20) is

      **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's unfavorable determination is **<u>AFFIRMED</u>**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **<u>DISMISSED</u>**.

Dated:      February 22, 2018

                              William B. Mitchell Carter
                              U.S. Magistrate Judge